UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SUDIP ROKA,

Petitioner,

v.

KRISTI NOEM, Secretary of the Department of Homeland Security, PAMELA JO BONDI, Attorney General, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Field Office, CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,

Respondents.

Case No.: 3:26-cv-00788-JES-MMP

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 1, 6]**

Before the Court is Petitioner Sudip Roka's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, filed on February 23, 2026. ECF No. 6, ("FAP"). On February 11, 2026, Petitioner filed the original Petition, in which he requested that the Court appoint him representation in this action. ECF No. 1. On February 20, 2026, the Court granted Petitioner's request and appointed the Federal Defenders as his counsel. ECF No. 3. On February 23, 2026, Petitioner amended his Petition as a matter of course. ECF

1

No. 6. Pursuant to the Court's Order to Show Cause, Respondents (the "Government") filed the Response. ECF Nos. 9, 10, ("Res."). Finally, Petitioner filed the Traverse on March 2, 2026. ECF No. 11, ("Trav."). For the reasons set forth below, the Court **GRANTS** the Petition.

## I.   BACKGROUND

Petitioner is a native of Nepal who entered the United States on November 23, 2024, fleeing persecution in his home country. FAP at 2. Upon entry, Petitioner immediately turned himself in to Respondents, was deemed inadmissible, and has since been mandatorily detained under 8 U.S.C. ("Section") 1225(b)(1)(B). *Id*.; Res. at 4.

Despite being detained for over sixteen months, Petitioner's removal proceedings are just getting underway. *See* Res. at 4-6. (explaining that Petitioner's initial master hearing was scheduled for January 30, 2025, but, as of this action's filing, is now set to be held on March 18, 2026). The parties are in dispute as to which is liable for causing the proceedings' delayed status. *See* FAP at 3; *see also* Res. at 5. *Id.* at 4-6. For example, at the time of this action's filing, Petitioner's following court date was scheduled for March 18, 2026, but on February 18, 2026, the upcoming hearing was continued. FAP at 3; Res. at 5. Petitioner claims that the continuance was only necessary because Respondents changed the assigned IJ again. FAP at 3. However, Respondents point to Petitioner's motion to continue the February 18, 2026, hearing based on him experiencing psychological symptoms which impaired his ability to participate in proceedings. ECF No. 10-1 at 19-22.

The strain of this prolonged detention has taken a serious toll on Petitioner's health as he takes medication for depression because of his confinement. Pet. Decl. ¶ 8. Petitioner seeks habeas relief due to his alleged unconstitutionally prolonged detention and requests that the Court either order his immediate release or a constitutionally sufficient bond hearing. Pet. at 10.

//

//

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    DISCUSSION

In Respondents' return to the Petition, they raise the following arguments: (1) Petitioner's claim is jurisdictionally barred by Section 1252; (2) Petitioner is lawfully detained under Section 1225; (3) his detention has not become unconstitutionally prolonged as to violate due process. Res. at 2-18; and (4) if the Court finds Petitioner to be entitled to relief, a bond hearing before an IJ is the proper remedy. *Id*. at 19-21. The Court will address each of these issues in turn.

The following issues have been addressed by the undersigned in a recent decision, *Sandesh v. LaRose*, No. 26-CV-0846-JES-DDL, 2026 WL 622690, at *1-6 (S.D. Cal. Mar. 5, 2026). The Court, therefore, elects to follow the rationale stated in *Sandesh* and incorporates it by reference. *Id*.

//

//

//

//

**A.    The Court has Jurisdiction Over This Petition**

The Court holds that it has jurisdiction over this Petition as it has found that, here, the jurisdiction stripping provisions of Section 1252 do not apply.

**B.    Petitioner is Appropriately Detained Under Section 1225**

Here, Petitioner was detained near the border, shortly after entering the country, without proper documents authorizing his presence, and had not been granted any form of parole. Pet. ¶ at 2. Thus, the Court finds that Respondents appropriately detained Petitioner under Section 1225(b). *See Sandesh*, 2026 WL 622690, at *2.

**C.    The *Banda* Factors Weigh in Favor of Ordering a Bond Hearing**

This Court, along with numerous others within this Circuit, have found that prolonged mandatory detention at some point will raise due process considerations. *Sandesh*, 2026 WL 622690, at *2-3; *see also Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025). To determine whether a noncitizen's prolonged detention, under Section 1225, is unconstitutional, courts consider the following factors:

(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019). Accordingly, the Court now turns to apply the *Banda* test.

**(1)    Length of Detention**

The first *Banda* factor, total length of detention, is "the most important factor." *Id.* While this factor itself is not dispositive, the length now is within the range such that this factor should weigh in favor of Petitioner. "Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" *Amado v. United States Dep't of Just.*, No. 25-CV2687-LL (DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov.

4, 2025) (finding detention of thirteen months to weigh in favor of the petitioner); *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025). (finding that although "almost 12 months" detention was not dispositive, factor does weigh in favor of petitioner); *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025) ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period . . . qualifies as prolonged."); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'") (citation omitted).

Petitioner has been detained since November 23, 2024. Pet. at 2. As of the date of this filing, he has been in custody for over 15 months. *Id*. The Court notes that such a period of detention is longer than those who were granted relief in the aforementioned cases. Thus, the first and most important *Banda* factor weighs strongly in favor of Petitioner.

### (2) Likely Duration of Future Detention

The second *Banda* factor considers "anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119.

"The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). "If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals." *Id*. Appealing an IJ's order of removal, generally, takes a long time. *See Banda*, 385 F. Supp. 3d at 1119 (finding appeal //

of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer).

Petitioner contends that he has reason to anticipate significant future detention. Pet. at 9. The IJ presiding over his removal proceedings has changed several times, and at the time of this Petition's filing, his master calendar hearing was currently set to take place in March 2026. ECF No. 6-1 ("Pet. Decl.") ¶¶ 2-5. And if Petitioner's asylum claim is denied and he is ordered removed, he plans to appeal that decision. *Id*. ¶ 6. Because "Petitioner's future detention can last several more months or even years[,]" this factor weighs in favor of Petitioner. *Abdul Kadir v. Larose*, No. 25CV1045-LL-MMP, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025).

### (3)   Conditions of Detention

For this *Banda* factor, "[t]he more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted).

Here, courts have recognized that the conditions at Otay Mesa Detention Center are "indistinguishable from penal confinement." *See Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020); *Amado v. United States Dep't of Just.*, No. 25-CV2687-LL(DDL), 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025). That hardship is compounded because as Petitioner alleges to suffer from depression, and take medication, as a direct result of his prolonged detention. Pet. Decl. ¶ 8. Thus, the Court finds that this factor also weighs in favor of Petitioner.

//
//
//
//
//
//
//

3:26-cv-00788-JES-MMP

**(4)   Delays Caused by the: Detainee; and (5) Government**

The fourth and fifth *Banda* factors look to the nature and extent of any delays in the removal proceedings caused by the petitioner and then the government respectively. *Banda*, 385 F. Supp. 3d at 1119-1120.

The Government argues that these factors weigh heavily against granting Petitioner relief because he alleges no specific facts that any delay is attributable to it. Res. at 16. It argues further that Petitioner sought and obtained ten continuances to either obtain counsel or otherwise perfect his applications for relief, presumably for his benefit. *Id*.

Petitioner avers to never have intentionally delayed his case. Pet. Decl. ¶ 6. Entirely outside his control, Petitioner's first attorney withdrew in April 2025, after a sponsor unexpectedly failed to pay. *Id*. ¶¶ 3-4. He, however, worked quickly to retain new counsel, who has filed all necessary documents promptly since being retained. ECF No. 6-2 ¶ 1.

More importantly, the most significant recent delay is attributable to the Government. Although Mr. Roka was scheduled for a merits hearing on February 18, 2026, that hearing could not go forward because he was assigned a new immigration judge just before that date—the third such reassignment in his case. *Id*. ¶ 2. Of the 464 days Petitioner has been detained, only 189 days are attributable to continuances that stemmed from his conduct—the remaining 275 days (more than nine months) are not attributable to him. Trav. at 7. The IJ reassignments that drove the recent delay weigh against the Government.

On balance, these factors weigh in Petitioner 's favor.

**(6)   Likelihood of Final Order of Removal**

The sixth factor looks to the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 ("In other words, the Court considers whether the noncitizen has asserted any defenses to removal."). Here, Petitioner applied for asylum in July 2025 and has not yet had his final merits hearing in his removal proceeding, or any form of appeal. *Id*. at 17-19. As a final order of removal has not been issued at this time, and the Court is in no position to assess the likelihood of success of Petitioner's asylum claim, it views this factor as neutral.

3:26-cv-00788-JES-MMP

In summary, at least four of the six factors weigh in favor of Petitioner, with the other factors being neutral. The Court, therefore, concludes that Petitioner's detention of over a year to date, under Section 1225(b), has become unconstitutional. Accordingly, due process requires the Government to provide him with an individualized bond hearing. *Sandesh*, 2026 WL 622690, at \*2-3; *Banda*, 385 F. Supp. 3d at 1117-20.

**D.      Due Process Requirements for a Bond Hearing Under Section 1225(b)**

Petitioner contends that his "unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process. Pet. at 1. The Court agrees. In *Sandesh*, the Court held—and does so here—that the proper standard at a bond hearing ordered after a prolonged detention found to violate the Fifth Amendment requires the Government to show, by clear and convincing evidence, that the detainee is a flight risk or poses a danger to the community. 2026 WL 622690, at \*2-3; *Singh v. Holder*, 638 F.3d 1196, 1200, 1203, 1208 (9th Cir. 2011).

It is imperative that the set forth legal standard is applied by the IJ to properly effectuate this Court's order for a constitutionally sufficient bond hearing. Doing so protects the critical liberty interest and due process rights of such individuals. *See, e.g,* *Banda*, 385 F. Supp. 3d at 1120; *Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at \*10 (W.D. Wash. Oct. 28, 2025); *Gao*, 805 F. Supp. 3d at 1112.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and **ORDERS** as follows:

(1)    The Court **ORDERS** Respondents to provide Petitioner with an individualized bond determination hearing within **ten days** of this Order.

    a. At the hearing, the Government **SHALL BEAR** the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if he were to be released.

//

8

3:26-cv-00788-JES-MMP

b.  Respondents **SHALL** make a complete record of the bond hearing available to Petitioner and his counsel.

(2)   Respondents are **ORDERED** to File a Notice of Compliance within **<u>five days</u>** of providing Petitioner with the bond hearing, including apprising the Court of the results of the hearing.

(3)   The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: April 6, 2026

Honorable James E. Simmons Jr.
United States District Judge

3:26-cv-00788-JES-MMP